*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARI LYNN OLIVER,

Plaintiff-Appellant,

v

MATTHEW WARREN OLIVER,

Defendant-Appellee.

UNPUBLISHED
June 30, 2022

No. 359539
Oakland Circuit Court
LC No. 2020-880855-DM

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Plaintiff, Shari Lynn Oliver, appeals as of right the trial court's judgment of divorce. Plaintiff challenges (1) the award of sole legal and physical custody of the parties' two minor children to defendant, Matthew Warren Oliver, (2) the supervised parenting time, (3) the child support determination, and (4) the division of the marital estate. We conclude that the trial court did not abuse its discretion in its award of custody, parenting time, and child support. We also find that the division of the marital estate was fair and equitable. Accordingly, we affirm.

## I. BACKGROUND

The parties married in March 2011. At that time, plaintiff owned a home in Waterford and defendant owned a home in Clinton Township. They lived in defendant's Clinton Township home after the marriage and converted plaintiff's Waterford home to rental property. Plaintiff was the main source of income throughout the marriage. A year after the birth of the couple's second child, defendant voluntarily terminated his employment so that he could care for their two children while plaintiff maintained full-time employment. In 2017, the parties purchased a home in Leonard, Michigan. They utilized the equity in plaintiff's Waterford home to help finance the purchase of the Leonard home. After the parties moved into the Leonard home, they converted defendant's Clinton Township home to rental property.

-1-

In February 2020, plaintiff quit her job and fled to her mother's home in Ohio with the parties' two minor children.[1] And without defendant's knowledge or consent, plaintiff unenrolled the children from their Michigan schools and enrolled them in Ohio schools. The children were returned to Michigan pursuant to a court order,[2] but plaintiff remained in Ohio. For more than a year, the children resided with defendant in Michigan during the week and with plaintiff in Ohio on weekends.[3] Every weekend for 14 months, defendant drove the children to and from Ohio, where the parties met at a midway point. The lengthy road trips took a toll on the children. As a result, the interim custody order was modified in May 2021. Plaintiff's parenting time was reduced to alternate weekends in Ohio, but she was granted liberal parenting time in Michigan provided that she gave advance notice to defendant.

A two-day bench trial was held in April and May 2021.[4] Plaintiff testified that she and the children were frequently subjected to domestic violence by defendant during the marriage. She made it clear that she was not willing to entertain any form of a co-parenting relationship with defendant. Plaintiff argued that she should be awarded sole legal and physical custody of the children, with only telephonic communication afforded to defendant. Plaintiff further expressed that she planned to move to Utah with her mother, regardless of the custody determination.[5] Defendant, on the other hand, was willing to cooperate with plaintiff and foster a positive relationship between her and the children.

After hearing all of the testimony and considering all of the evidence, the trial court issued a thorough opinion awarding defendant sole legal and physical custody of the children, granting plaintiff supervised parenting time with conditions, ordering plaintiff to pay child support to defendant, and dividing the marital estate. The judgment of divorce was consistent with the trial court's rulings. Plaintiff now appeals.

---

[1] Plaintiff candidly admitted that she had planned her departure for several months without defendant's knowledge. On the day that she fled, she left a note that simply stated, "This is goodbye."

[2] In February 2020, defendant filed a complaint for custody and an emergency motion seeking the return of the parties' two minor child to Michigan. *Oliver v Oliver,* Oakland County Case No. 20-880799-DC. Plaintiff filed the instant divorce action before defendant's motion was heard in the custody action.

[3] The parties both agreed to the March 3, 2020 Interim Order Regarding Minor Children that set forth the interim custody arrangement, which was largely based on plaintiff's intention to remain in Ohio.

[4] After the first day of trial, the trial court conducted preference interviews with the two minor children and ordered plaintiff to undergo a psychological evaluation to aid the court in assessing the necessary factors for the custody determination.

[5] At the time of trial, plaintiff did not have a specific timeframe for her move because her mother was in the process of having a new home built in Utah. Plaintiff filed a change of address with the court in November 2021 with a Utah address.

## II. CUSTODY AND PARENTING TIME

Plaintiff argues that the trial court abused its discretion by awarding defendant sole legal and physical custody of the children, while granting her supervised parenting time. We disagree.

### A. STANDARD OF REVIEW

We must affirm a custody order unless the trial court's findings of fact were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. MCL 722.28; *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Merecki,* 336 Mich App at 645 (citation omitted). We will affirm a trial court's findings regarding the existence of an established custodial environment and each custody factor unless the evidence clearly preponderates in the opposite direction. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). We defer to a trial court's credibility determinations when we review its factual findings. *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015). We review a trial court's discretionary rulings, such as a custody determination, for an abuse of discretion. *Merecki*, 336 Mich App at 645. A court abuses its discretion in a custody action when the result "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted). Finally, we review questions of law for clear legal error, which occurs if the trial court incorrectly chooses, interprets, or applies the law. *Id*.

### B. ANALYSIS

### 1. PHYSICAL CUSTODY

Plaintiff challenges the trial court's custody decision, but she has not addressed the individual best-interest factors or the trial court's findings for each factor. We find that the trial court's findings were not against the great weight of the evidence and that the trial court did not abuse its discretion in awarding sole physical custody of the children to defendant.

A trial court must first address whether a child has an established custodial environment with one or both parents before making a custody determination. *Demski*, 309 Mich App at 445. MCL 722.27(1)(c) provides that

> [t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

This Court has defined an established custodial environment as

> one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a

relationship between custodian and child and is marked by security, stability, and permanence. [*Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008).]

In this case, the trial court determined that the children's established custodial environment was solely with defendant, explaining:

the minor children derive guidance and parental comfort from Defendant Dad. Although Plaintiff Mom fed and cared for the minor children during her weekend visitations, Defendant ensured they were fed, clothed, prepared for school, disciplined, transported to and from medical appointments, and afforded their daily needs. For well over a year, Plaintiff Mom has remained aloof with respect to the minor children's daily needs. Similarly, she was conspicuously absent from any involvement in their academic endeavors. Her ability to appreciate the impact her decision to withhold financial support to Defendant Dad had on the minor children denotes an obvious inability to act in their best interests.

We conclude that the trial court's finding that an established custodial environment existed with the defendant does not clearly preponderate in the opposite direction. While the evidence supports that there was an established custodial environment with both plaintiff and defendant before the commencement of the divorce proceedings in February 2020, that custodial environment was destroyed when plaintiff moved out-of-state and the children lived, primarily, with defendant. Between February of 2020 and when the trial court entered its October 2021 order, any custodial environment that they children had with plaintiff eroded until it was, essentially, non-existent. During those 20 months, the children looked primarily to defendant for guidance, discipline, the necessities of life, and parental comfort. That 20-month period constituted an "appreciable time" for purposes of finding an established custodial environment under MCL 722.27(1)(c). See, e.g., *In re AP*, 283 Mich App 574, 604-605; 770 NW2d 403 (2009) (finding that a period of approximately four months was sufficient to establish a custodial environment with one parent). We must defer to the trial court's fact-finding and credibility determinations, unless the evidence clearly preponderates in the opposite direction. *Pennington*, 329 Mich App at 570; *Demski*, 309 Mich App at 445. And we are not persuaded that it does.

After determining whether an established custodial environment exists, a trial court must weigh the statutory best-interest factors outlined in MCL 722.23. *Demski*, 309 Mich App at 446. Those factors include:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

-4-

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

A trial court has discretion consider the relative weight of each of these factors under the circumstances and is not required to give each factor equal weight. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

At trial, both parties requested an award of sole physical custody. The trial court weighed each of the factors thoroughly in its written opinion, concluding that plaintiff prevailed on factor (k) (domestic violence), the parties remained neutral on factors (a) (love, affection, emotional ties) and (f) (moral fitness), and defendant prevailed on the remaining factors. The trial court's conclusion was based on the testimony and evidence at trial, the pleadings, the preference interviews with the minor children, and the confidential psychological evaluation of the plaintiff. The trial court applied the relevant statutory factors and its findings were supported by the evidence. Plaintiff primarily attacks the trial court's credibility determinations. But the trial court has the discretion to weight the credibility of the evidence and testimony and we will not second-guess its determination. *Demski*, 309 Mich App at 445. As our Supreme Court explained in *Fletcher v Fletcher*, 447 Mich 871889-890; 526 NW2d 889 (1994):

[T]rial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also

may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests.

Because the trial court found that the children had an established custodial environment with defendant, plaintiff had the burden of demonstrating by clear and convincing evidence that changing custody solely to plaintiff was in the children's best interests. See *Foskett v Foskett,* 247 Mich App 1, 6; 634 NW2d 363 (2001). Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Martin,* 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks, citation, and alterations omitted).]

We cannot conclude that the trial court's detailed findings regarding each of the best-interest factors was against the great weight of the evidence because the facts do not clearly preponderate in the opposite direction. *Merecki,* 336 Mich App at 645. We conclude that plaintiff did not meet her burden of producing evidence so clear, direct and weighty, and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, that it was in the children's best interests to alter the established custodial environment by awarding plaintiff sole physical custody. The decision awarding sole physical custody to defendant was therefore not an abuse of discretion.

## 2. LEGAL CUSTODY

In determining whether joint legal custody is appropriate, a trial court must consider the best-interest factors set forth in MCL 722.23, and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(a) and (b).

As this Court explained in *Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020):

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [Citations omitted.]

In this case, although both parties testified that their communications were civil, plaintiff made it abundantly clear that she could not, and would not, co-parent with defendant. And plaintiff makes the same arguments on appeal. Recognizing this hurdle, the trial court concluded, "Plaintiff Mom has not only stated she refuses to coparent, but this Court believes that parties are incapable of cooperating with one another to ensure the best decisions are made in relation to the children's medical, educational, and other essential needs." Based on its conclusion that plaintiff only

prevailed on factor (k) (domestic violence), the trial court found that it was in the best interests of the minor children that defendant be awarded sole legal custody.

Once again, plaintiff primarily attacks the trial court's credibility determinations, which we will not second-guess. *Demski*, 309 Mich App at 445. Plaintiff made it clear during the trial that she was unwilling and unable to cooperate with the defendant in a manner that is in the children's best interests, which must be considered under MCL 722.26a(1)(b). Because the facts do not clearly preponderate in the opposite direction, we conclude that trial court's findings were not against the great weight of the evidence. And since these findings were more than adequate to comply with the statute and to support the trial court's decision awarding defendant sole legal custody, we conclude that the court did not abuse its discretion.

### 3. PARENTING TIME

Parenting time must be granted in accordance with the best interests of the child. MCL 722.27a(1). A trial court may consider the factors set forth in MCL 722.27a(7) when determining appropriate parenting time. In addition, the trial court may consider the best-interest factors set forth in MCL 722.23 when deciding whether to award parenting time. *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013). A court may also subject parenting time to conditions. MCL 722.27(1)(b). The trial court has the authority to adopt, revise, or revoke a parenting-time condition if it determines that it is within the best interests of the children. *Kaeb v Kaeb*, 309 Mich App 556, 571; 873 NW2d 319 (2015).

In this case, the trial court limited plaintiff's parenting time to supervised parenting time in Michigan until she presents proof of enrollment in therapy, completes a co-parenting class, and completes at least eight supervised visits. The trial court concluded that these conditions were supported by particular facts, including plaintiff's consistent animosity toward the defendant, her attempts to elicit negative commentary about the defendant from the children, her inflexibility with respect to parenting time, and the inconvenience of travel for the children when the plaintiff relocates to Utah. We find that the evidence and testimony supported the factors mitigating against greater parenting time and that trial court's findings were not against the great weight of the evidence. The trial court's order left open the possibility that plaintiff could be granted more time in the future. Accordingly, we conclude that the trial court did not abuse its discretion in limiting plaintiff's parenting time.

### III. CHILD SUPPORT

Plaintiff argues that the trial court abused its discretion in ordering plaintiff to pay child support because she does not have a current source of income. We disagree.

### A. STANDARD OF REVIEW

In *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011), this Court explained:

> In determining the appropriate amount of child support, a trial court must presumptively follow the Michigan Child Support Formula (MCSF). We review a trial court's finding of facts underlying an award of child support for clear error. A

finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made. Finally, we review a trial court's discretionary rulings, such as the decision to impute income to a party, for an abuse of discretion. An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes. [quotation marks and citations omitted.]

## B. ANALYSIS

The initial step in deciding child support is to determine each party's net income by considering all sources of income. *Carlson*, 293 Mich App at 205. "This calculation not only includes a party's actual income, but it can include imputed income," which means that the party is considered to have income or resources that they do not in fact have. *Id*. In deciding whether to impute income for purposes of calculating child support, the trial court must first determine whether the individual "is voluntarily unemployed, underemployed, or has an unexercised ability to earn." *Clarke*, 297 Mich App at 181. The court's decision to impute income "must be supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. (quotations and citations omitted).

For purposes of imputing income when determining child support, the trial court must consider (1) the party's prior employment experience; (2) the party's education level and any special skills or training; (3) the party's physical and mental disabilities; (4) the party's availability for work; (5) the availability of employment in the local area; (6) the prevailing wage in the local area; (7) the party's diligence in seeking employment; (8) whether there is any evidence that the individual is able to earn the imputed income; (9) the party's personal history; (10) whether the party's children are in the home and, if so, the effect on earnings; and (11) whether there has been a significant reduction in income compared to the time period before the filing of the initial complaint. See 2021 MCSF 2.01(G)(2). The trial court may consider a party's motive for voluntarily reducing income. *Clarke*, 297 Mich App at 186 n 2.

It is difficult to discern plaintiff's challenges regarding child support. Essentially, plaintiff argues that her unemployed status renders her unable to pay child support. We are not persuaded that the trial court abused its discretion by imputing $80,000 annual income to plaintiff. Plaintiff has a master's degree in computer engineering and an undergraduate degree in manufacturing engineering. Before plaintiff voluntarily terminated her 15-year employment relationship and fled to Ohio, she was earning $94,000 annually as a product engineer. Conversely, the evidence demonstrated that defendant's earning potential was must less. Defendant has a high school diploma. He testified that he believed he could earn $40,000 to $45,000 annually. Further, defendant had not worked outside the home since 2016, when he and plaintiff agreed that he would be a stay-at-home father to care for their two children. At the time of trial, defendant's only income was rental income from his former home in Clinton Township.

The trial court applied the MCSF factors to each party and separately weighed their ability to work, education, employment history, income history, physical health, and needs of the children. After considering these factors, the trial court imputed an income of $32,000 to defendant and $80,000 to plaintiff. The trial court directed the parties to utilize these income figures to calculate child support. We defer to the trial court's abilities to weigh conflicting evidence and determine

the credibility of the witnesses. *Demski*, 309 Mich App at 445. We conclude that the record supports the trial court's findings and we are not persuaded that the trial court abused its discretion in its imputation of income to each of the parties.

## IV. DIVISION OF THE MARITAL ESTATE

Plaintiff argues that the trial court's division of the marital estate was unfair and inequitable. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). A trial court's determinations regarding whether assets are marital or separate property involve questions of law, which this Court reviews de novo. *Foster v Van Buren Co*, 332 Mich App 273, 280; 956 NW2d 554 (2020).

## B. ANALYSIS

A trial court's goal when dividing the marital estate is to arrive at an equitable division of the property considering the specific circumstances of the case. *Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019). While "mathematical equality" is not required, the court must explain "any significant departure from congruence." *Id*. The court may also weigh the following factors in dividing the marital estate:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*.]

First, the trial court must determine what property is considered marital property and what is considered separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010). Marital property is "that which is acquired or earned during the marriage," and in contrast, separate property is best characterized as "that which is obtained or earned before the marriage." *Id*. at 201, citing MCL 552.19. Generally, each party takes their own separate property. *Cunningham*, 289 Mich App at 201. But separate assets may become marital property if the assets are commingled with marital assets and are treated as marital property by the parties. *Pickering v Pickering*, 268 Mich App 1, 12–13; 706 NW2d 835 (2005). Additionally, when dividing retirement accounts, MCL 552.18 provides, in pertinent part:

> (1) Any rights in and to vested pension, annuity, or retirement benefits, or accumulated contributions in any pension, annuity, or retirement system, payable to or on behalf of a party on account of service credit accrued by the party during

marriage *shall be considered part of the marital estate subject to award by the court under this chapter.*

> (2) Any rights or contingent rights in and to unvested pension, annuity, or retirement benefits payable to or on behalf of a party on account of service credit accrued by the party during marriage may be considered part of the marital estate subject to award by the court under this chapter where just and equitable. [Emphasis added.]

In this case, we are not persuaded that the trial court erred by holding that defendant was entitled to half of the increased equity in plaintiff's retirement account since the date of the parties' marriage, while allowing plaintiff to retain the account's pre-marital value. The trial court's decision is consistent with MCL 552.18(1). See *Pickering*, 268 Mich App at 7-8 (recognizing that under MCL 552.18(1), "[a] right to vested pension benefits accrued by a party during the marriage must be considered part of the marital estate subject to award upon divorce").

We also find that the trial court did not err in equally dividing the proceeds of the sale of the marital home in Leonard. The home was purchased during the marriage and both parties resided in the home with their two children. While the equity in plaintiff's Waterford home (which was plaintiff's separate property) was used to help finance the purchase of the Leonard home, that equity was commingled with the marital estate when it was used to purchase the marital home. *Pickering*, 268 Mich App at 12–13. Further, there was testimony that defendant contributed extensively to the improvements of the Leonard home, including demolition work, tearing out old plumbing and carpeting, and installing new floors. As this Court has explained, "the sharing and maintenance of a marital home affords both spouses an interest in any increase in its value (whether by equity payments or appreciation) over the term of a marriage" and the increase in value is marital property subject to equitable division. *Reeves v Reeves*, 226 Mich App 490, 495-496; 575 NW2d 1 (1997). The trial court also found that the equal division of the proceeds from the sale of the Leonard home was necessary to provide for the support and maintenance of defendant and the parties' children entrusted to his care, particularly given the considerable income disparity between the parties and that plaintiff was dilatory in providing financial support to her children during the proceedings. Under the circumstances, we are not persuaded that the trial court's equal division of the marital estate was unfair or inequitable.

## V . PLAINTIFF'S MOTIONS FOR RECONSIDERATION, REHEARING AND TO SHOW CAUSE

Plaintiff argues that the trial court erred by denying her motions for reconsideration and rehearing of the trial court's October 29, 2021, opinion and order, and denying her motion to show cause for perjury, false statements, and obstruction of justice. We disagree.

## A.  STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a motion for reconsideration or rehearing for an abuse of discretion. *Shivers v Covenant Healthcare Sys*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos 351638, 351795, & 351863); slip op at 5; *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540; 687 NW2d 143 (2004). To the extent that plaintiff's motion

-10-

to show cause also involved a dispositional ruling of the trial court, this Court likewise reviews such rulings for an abuse of discretion.  See, e.g., *Ducharme v Ducharme*, 305 Mich App 1, 5; 850 NW2d 607 (2014) (a trial court's dispositional rulings are reviewed for an abuse of discretion).

## B.  ANALYSIS

Plaintiff's motion for reconsideration simply reiterated the same arguments that she presented at trial. The trial court denied the motion,[6] concluding that plaintiff did not otherwise demonstrate a "palpable error" by which the trial court and the parties were misled. MCR 2.119(F)(3). After her motion for reconsideration was denied, plaintiff filed a motion for rehearing that raised the same issues. The arguments in plaintiff's motions focused on the trial court's credibility determinations. Plaintiff maintains that the trial court palpably erred in choosing to believe defendant's testimony and evidence. We defer to the trial court's abilities to weigh conflicting evidence and determine the credibility of the witnesses. *Demski*, 309 Mich App at 445. We conclude that the trial court did not abuse its discretion by denying both motions.

We also find that the trial court did not abuse its discretion by denying plaintiff's motion to show cause.  To the extent that defendant denied the allegations of his "bad behavior," including domestic violence, child endangerment, sexual harassment, infidelity, and being an "accomplice to the murder of a pet," defendant's responses to these allegations were a matter of credibility for the trial court to resolve, *Martin*, 331 Mich App at 239, and plaintiff did not otherwise offer support for her contention that defendant committed perjury. Rather, the record reflects that defendant and plaintiff had conflicting recollections on several issues addressed during their trial testimony. Further, plaintiff's arguments that defense counsel made defamatory accusations against her are not supported by the record.

## VI. CONCLUSION

For the reasons set forth in this opinion, we affirm the trial court's orders and judgment of divorce.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

[6] The trial court exercised its discretion and concluded that oral argument was not necessary. MCR 2.119(F)(2).